# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**FARO TECHNOLOGIES, INC.,**

               **Plaintiff,**

-vs-                                         **Case No.  6:05-cv-1702-Orl-31JGG**

**CIMCORE CORPORATION; ROMER,
INC., and  HEXAGON HOLDINGS,  INC.**
                          **Defendants.**

_____/

# ORDER

This matter comes before the Court on the motion to dismiss for lack of personal jurisdiction (Doc. 17) filed by Defendant Hexagon Holdings, Inc. ("Hexagon").  The portions of that motion dealing with former Defendants Hexagon Metrology North America and Romer Cimcore, Inc. were resolved in a previous order (Doc. 44).  In resolving the remaining portion of the motion, the Court has also considered Faro's response (Doc. 42) and Hexagon's reply to the response (Doc. 59).[1]

## I.    Background

The Plaintiff, Faro Technologies, Inc. ("Faro"), filed the instant suit on November 15, 2005, contending that the Defendants infringed on United States Patent No. 6,965,843 (the "'843 patent"), entitled "Portable Coordinate Measurement Machine with Integrated Line Laser

---

[1]Several of the documents relevant to this dispute were originally filed under seal, along with publicly filed redacted versions.  Simultaneously with this order, the Court is ordering the unsealing of those documents, some of which were reviewed in resolving the instant motion.  Those documents which have not yet been unsealed lack docket numbers, however, and therefore for clarity's sake the Court will not include citations to them in this opinion.

Scanner." (Doc. 1 at 2). Faro contends that Hexagon and the other Defendants infringed the '843 patent by making and selling coordinate measuring machines under the designation "Infinite SC" or by contributing to or inducing infringement by others. (Doc. 1 at 3). Faro is a Florida corporation, while Hexagon is a Delaware corporation with its principal place of business in Rhode Island. (Doc. 1 at 2). The parties have engaged in limited discovery on the jurisdictional issue.

## II.     Standards

In the absence of jurisdiction over the person of the defendant, the court is powerless to proceed. *Read v. Ulmer*, 308 F.2d 915, 917 (5th Cir. 1962).[2] The plaintiff bears the burden of proof of establishing a *prima facie* case of personal jurisdiction over a nonresident defendant. *Meier v. Sun International Hotels, Ltd.*, 288 F.3d 1264, 1268-69 (11th Cir. 2002). "A *prima facie* case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990).

In order to prevail on a motion to dismiss for lack of jurisdiction over the person, a defendant must file an affidavit containing allegations that, if taken as true, show that the defendant's conduct does not make him or her amenable to service. *Acquadro v. Bergeron*, 851 So.2d 665, 672 (Fla. 2003). Where a defendant submits such affidavits, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction – unless those affidavits contain only cursory assertions that the defendant is not subject to jurisdiction. *Sun International*

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981.

at 1269.  Where the plaintiff's complaint and supporting evidence conflict with the defendant's

affidavits, the court must construe all reasonable inferences in favor of the plaintiff.  *Id.*

In the absence of a federal statute governing service of process in a particular case, a

federal court sitting in diversity must satisfy both the forum state's long-arm statute and the Due

Process Clause of the Fourteenth Amendment before it may exercise jurisdiction over a non-

resident defendant.  *Posner v. Essex Ins. Co., Ltd.*, 178 F.3d 1209 (11th Cir. 1999).  The Florida

long-arm statute, Fla. Stat. § 48.193, provides in pertinent part that:

> (1) Any person, whether or not a citizen or resident of this state, who personally or
> through an agent does any of the acts enumerated in this subsection thereby submits
> himself or herself and, if he or she is a natural person, his or her personal
> representative to the jurisdiction of the courts of this state for any cause of action
> arising from the doing of any of the following acts:
>
> > (a) Operating, conducting, engaging in, or carrying on a business or business
> > venture in this state or having an office or agency in this state.
> >
> > (b) Committing a tortious act within this state. . . .
>
> (2) A defendant who is engaged in substantial and not isolated activity within this
> state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to
> the jurisdiction of the courts of this state, whether or not the claim arises from that
> activity.

Fla. Stat. § 48.193.  Thus, Florida's long-arm statute provides for two types of personal

jurisdiction: specific jurisdiction under § 48.193(1), under which the plaintiff's claims must arise

from acts committed in this state by the defendant, and general jurisdiction under 48.193(2), which

has no such limitation.  Florida's long-arm statute is to be strictly construed.  *Sculptchair, Inc. v.

Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996).

If the state long-arm statute is satisfied, the Court must then determine whether sufficient

minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment "so that

'maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"

*Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 256 (11th Cir. 1996) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  When deciding personal jurisdiction issues in a patent case, the district court is required to apply Federal Circuit precedent, rather than contrary precedent from its own circuit.  *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1377 (Fed. Cir. 1998).[3]  Under Federal Circuit precedent, an exercise of specific jurisdiction will satisfy the Due Process Clause if (1) the defendant purposefully directed its activities at residents of the forum; (2) the claim arises out of or relates to those activities; and (3) an assertion of personal jurisdiction would be reasonable and fair.  *Id.* at 1377-78.

## III.    Analysis

Along with its motion to dismiss, Hexagon filed an affidavit from its president and CEO, William Gruber ("Gruber").  (Doc. 17-2). Gruber addressed a long list of items that might support the exercise of jurisdiction – such as the presence of Hexagon agents or Hexagon-owned property in Florida – and denied that they existed.  (Doc. 17-2 at 2-3).  The Court finds that Hexagon has satisfied its burden of producing a non-cursory affidavit in support of its jurisdictional challenge. *See Meier* at 1269.  Thus, the burden shifts to Faro to produce evidence supporting an exercise of *in personam* jurisdiction.

Faro offers two lines of argument.  First, Faro contends that Hexagon is subject to personal jurisdiction in this state because Hexagon is committing a tortious act in this state – specifically, that Hexagon is inducing infringement of the '843 patent in Florida.  Fla. Stat. § 48.193(1)(b).

---

[3]The Federal Circuit defers to the interpretation of the forum state's long-arm statute given by that state's highest court.  *Id.*

Second, Faro contends that Hexagon is carrying on business in this state through two subsidiaries – Brown & Sharpe, Inc. ("Brown") and Romer, Inc. ("Romer") – thus subjecting it generally to the jurisdiction of this state's courts.  Fla. Stat. § 48.193(2).

### A.   Specific Jurisdiction under § 48.193(1)(b)

As Faro points out, inducement of infringement requires proof of two elements: an act by the defendant intended to induce another to infringe, and actual infringement by a third party. *Young Dental Mfg. Co. v. Q3 Special Products, Inc.*, 891 F.Supp. 1345, 1348 (E.D. Mo. 1995). Faro points to three web sites[4] on which Hexagon advertises products from Romer and another subsidiary – CimCore Corporation ("CimCore") –  including the Infinite SC.  For example, Faro contends that, as of February 9, 2006, the Hexagon-owned web page "www.hexagon-metrology.us" included the following statement:

> We are the world's largest supplier of metrology equipment and software.  This site will route you to the North American operating companies that support all the Hexagon product lines and brands that are available in the North American market (USA, Canada, Mexico, Central America and Caribbean nations).

That web page also contains two links to "www.hexagon-metrology.us/romer.php," a web site that describes the articulated arms available from "Romer CimCore"[5] and includes the

---

[4]There is some dispute as to the number of web sites that contain references to the accused device, and who the owners of those sites might be.  For purposes of this motion, the Court accepts Faro's characterizations as to the number and ownership of the sites at issue.  In addition, Faro complains that the defendants improperly failed to produce any information regarding the sales (if any) of the accused device in Florida.  Without deciding whether the defendants engaged in improper discovery conduct, the Court will assume for purposes of this motion that sales of the Infinite SC have occurred in Florida.

[5]According to the information provided on the web page, the articulated arms are sold under the Romer brand name in North America, and under the CimCore brand name elsewhere.  Despite the reference on the web page, there is no separate legal entity named "Romer CimCore."  (Doc. 44 at 1).

following statement: "Romer Cimcore's NEW INFINITE arm with integrated Wi-Fi wireless connectivity and Li-ION battery provides INFINITE portability." The page contains contact information for Romer and a link to "www.romer.com," but does not allow interested parties to order the Infinite SC or other products directly. According to Faro, Hexagon also owns "www.romer.com" and "www.cimcore.com," both of which include additional information about the Infinite SC.

According to Faro, these web pages demonstrate that Hexagon is advertising the accused device and thereby inducing infringement of its patent. Faro argues that the infringing devices are sold in Florida, and each time this occurs, Hexagon has committed a tortious act in Florida for purposes of the long-arm statute. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1562 (Fed. Cir. 1994) (holding that tortious injury occurs in state where the infringing sale occurs, even where defendant was not the seller). As a result, Faro argues, Hexagon is subject to specific jurisdiction in Florida, even if Hexagon is not the one selling the Infinite SC.

However, even assuming *arguendo* that the Infinite SC infringes on Faro's patent, and that sales of the Infinite SC have occurred in Florida, Faro has failed to demonstrate that an exercise of specific jurisdiction in this case would comport with the requirements of the Due Process Clause, for two reasons. First, Faro must show that Hexagon has purposefully directed its activities toward the forum state. But the web sites at issue – which merely refer to the accused devices without making them available for purchase – are not directed toward Florida. *See*, *e.g.*, *3D Systems, Inc. v. Aarotech Laboratories, Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998) (holding that nonresident

_____

The Plaintiff contends that defendant Romer manufactures the Infinite SC.

defendant that maintained passive web sites mentioning products of allegedly infringing subsidiary and forwarded resulting e-mail inquiries to subsidiary did not thereby direct activities toward residents of forum state).  Second, Faro must show that infringing sales occurred in this state *as a result of Hexagon's inducement*.  Even assuming *arguendo* that infringing sales have occurred in Florida, Faro has not produced any evidence that such sales arose from or are related to Hexagon's web sites or any other inducement on Hexagon's part.

### B.    General Jurisdiction under § 48.193(2)

Relying on the Eleventh Circuit's *Sun International* case, Faro attempts to argue that the activities of its subsidiaries subject Hexagon to general jurisdiction in the Florida courts.  Hexagon does not dispute that its subsidiaries do substantial business in Florida.

In the *Sun International* case, the plaintiff had been injured in the Bahamas.  *Id.* at 1267. He sued the parties that owned and operated the Atlantis Bahamian resort,[6] all of which were Bahamian corporations, in Florida district court.  *Id.*  The Bahamian corporations – referred to by the court as the "Sun Defendants" – sought to have the case dismissed on personal jurisdiction grounds, arguing that they lacked the necessary minimum contacts with Florida.  *Id.* at 1268.  The Sun Defendants presented affidavits stating, among other things, that they were organized and incorporated in the Bahamas, had their principal places of business in the Bahamas, did not have registered agents in the United States, and conducted business only in the Bahamas.  *Id.*  The plaintiff argued that the Sun Defendants were subject to general jurisdiction in Florida, because

---

[6]The plaintiff contended that the operators of a boat working in conjunction with the Atlantis resort had struck him while he was snorkeling.  *Id.*

they had subsidiaries (referred to as the "Florida Subsidiaries") conducting "substantial and not isolated activity" as their agents within the state. *Id.* at 1269.

The *Sun International* court acknowledged that a foreign parent corporation is not generally subject to the jurisdiction of a forum state merely because a subsidiary is doing business there. *Id.* at 1272. However, the court continued, if the subsidiary is merely an agent through which the parent company conducts business in a particular jurisdiction or if the subsidiary's separate corporate status is formal only, then the parent will be said to be doing business in the jurisdiction through the subsidiary for purposes of asserting personal jurisdiction. *Id.* "In order to establish jurisdiction over the Sun Defendants, therefore, Plaintiff must persuade the court that the Florida Subsidiaries are the entities through which the Sun Defendants conduct substantial business activity in Florida." *Id.*

The *Sun International* court then examined the activities of the Florida Subsidiaries, both of which were wholly owned by one of the Sun Defendants. *Id.* The court found that the Florida Subsidiaries had been established by the Sun Defendants to serve the Bahamian hotel business, that they solicited and coordinated reservations for the Atlantis and that in the year the plaintiff had been injured they coordinated more than half of the guests at the Atlantis. *Id.* In addition, one of the Florida Subsidiaries coordinated all advertising and marketing for the Atlantis, purchased goods in the United States for it, and provided day to day accounting services, including collection services, for the resort. *Id.* at 1272-73. The Florida Subsidiaries and the Sun Defendants also effectively shared bank accounts, with the subsidiaries sending invoices to themselves and writing checks to themselves from the accounts for the services they had rendered to the Sun Defendants. *Id.* at 1273. Finally, the comptroller for one of the Sun Defendants admitted in his deposition that

the Florida Subsidiaries "did not undertake any business activity for anyone other than the Sun

[D]efendants" and that the sole purpose of one of the subsidiaries was "to sell travel packages only

to Atlantis and other resorts owned and operated by the Sun Defendants." *Id.* The court found

that the evidence submitted by the plaintiff strongly suggested that the Florida Subsidiaries were

"mere instrumentalities" of the Sun Defendants and, as a result, the plaintiff had met his *prima*

*facie* burden of establishing jurisdiction under the Florida long-arm statute. *Id.*

In attempting to establish that Romer and Brown are mere agents or instrumentalities of

Hexagon, Faro relies on the following facts, gleaned from the deposition of Gruber, Hexagon's

president and CEO. Gruber testified that Hexagon exists only to hold shares of stock and file a

consolidated United States tax return for the various companies it owns. Hexagon, Romer and

Brown have common officers: Gruber is also president and CEO of Brown and the CEO of

Romer; Hexagon's secretary is also Brown's secretary; and Mark Delaney ("Delaney") serves as

CFO for both Brown and Romer. The CFO of Brown prepares Hexagon's tax returns, aided by

other Brown employees, apparently because Hexagon has no employees of its own. Brown pays

for the work performed by Gruber and Delaney for Hexagon. Brown also provides rent-free space

for Hexagon. Gruber testified that he was not aware of any divergence between the interests of

Hexagon and Brown.

The Hexagon board never meets, and Gruber did not recall any instance when Romer's

board met. Gruber appointed himself CEO of Romer, apparently without any resolution from

either corporation's board of directors. Thus Gruber as the CEO of Hexagon has the power to hire

and fire Romer's CEO and, as Romer's CEO, has to power to hire and fire Romer's president.

Gruber testified that, without its subsidiaries, Hexagon would not have any purpose.  Faro interprets this to mean that Hexagon and Romer (among others) have a common purpose.

Even assuming the truth of all of the foregoing, Faro has still failed to establish a *prima facie* case that Romer and Brown – or any other Hexagon subsidiaries – are doing business in Florida on Hexagon's behalf.  Faro has not presented evidence of the sort of commingling of financial affairs that was present in *Sun International*.  There is no evidence that the subsidiaries were set up to do business for Hexagon, or that they have actually done business for their parent corporation.  Rather, all of the evidence suggests that Hexagon's subsidiaries are conducting business in Florida for their own benefit, and that Hexagon is a mere holding company.

The testimonial evidence regarding common purposes and non-divergent interests between Hexagon and its subsidiaries at best suggests cooperation, not control.   Under Florida law, the issue of control "is critical to the determination of agency." *Florida v. American Tobacco Co.*, 707 So. 2d 851, 854 (Fla. 4th DCA 1998) (listing elements of agency relationship, including "control by the principal over the actions of the agent.").  For a subsidiary to be considered an agent of its parent, the parent must exercise "very significant" control. *Id.*  It is not enough for the entities to share officers or directors, or for one entity to have the power to hire and fire the officers and directors of the other; for personal jurisdiction to attach, the parent corporation must exercise operational control of the day-to-day business of the subsidiary. *Id.* at 856.

Faro has not produced any evidence that Hexagon directs (or could direct) the day-to-day operations of its subsidiaries, or that the separate corporate identities of Hexagon's subsidiaries are a mere formality.  As such, Faro has failed to demonstrate that Hexagon is subject to general jurisdiction pursuant to Fla. Stat. § 48.193(2).  Because Faro has failed the first part of the two-

step inquiry, there is no need for this Court to consider whether an exercise of jurisdiction over

Hexagon would comport with the requirements of the Due Process Clause.

**IV.      Conclusion**

   In consideration of the foregoing, it is hereby **ORDERED AND ADJUDGED** that the

motion to dismiss for lack of personal jurisdiction (Doc. 17) is **GRANTED** as to Defendant

Hexagon Holdings, Inc., which is **DISMISSED** from this action.  In addition, the Clerk is

**DIRECTED** to unseal the sealed documents filed in this case on February 21, 2006, March 10,

2006, and March 21, 2006.


   **DONE** and **ORDERED** in Chambers, Orlando, Florida on April 27, 2006.


                                        GREGORY A. PRESNELL
                                        UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Party